Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| SPORTS ALTERNATIVE P.R. INC. REPRESENTADA POR SU PRESIDENTE LUIS ÁGUILA AVILÉS<br><br>IN RE<br><br>Recurrente | TA2025RA00182 | *Revisión de Decisión Administrativa* procedente del Departamento de Recreación y Deportes<br><br>Sobre: Amonestación y Multa Administrativa por Violación a la Normativa Vigente del DRD |
|---|---|---|

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 7 de octubre de 2025.

El 20 de agosto de 2025, compareció ante este Tribunal de Apelaciones Sports Alternative P.R., representada por su presidente, el señor Luis Águila Avilés (en adelante, Sports Alternative o parte recurrente), mediante recurso de revisión judicial. Por medio de este, nos solicita que revisemos la *Resolución* emitida el 9 de junio de 2025, y notificada el 16 de junio de 2025 por el Departamento de Recreación y Deportes (en adelante, DRD o parte recurrida). En virtud del aludido dictamen, el DRD le impuso multas a la parte recurrida por violaciones a los Reglamentos y a la Ley Núm. 8 de enero de 2004, según enmendada.

Por los motivos que exponemos a continuación, se revoca la *Resolución* recurrida y se devuelve el caso al Departamento de Recreación y Deportes para que celebre una vista administrativa.

**I**

Según surge del expediente, el 23 de enero de 2025, la parte recurrente le remitió una misiva al señor Héctor Vázquez Múñiz,

Secretario del DRD donde le notificó que, se estarían celebrando varios torneos deportivos. En específico, detalló que, se estaría celebrando en el Centro de Convenciones de Puerto Rico el torneo *Spring Volleyball Challenge* del del 24 al 26 de enero de 2025, el *PR Volleyball Championship* del 1-8 de junio de 2025, y el PR Basketball Junior Olympics. En su misiva, también aseguró que, todos los eventos contaban con árbitros y entrenadores certificados por el DRD o sus respectivas federaciones.

Del expediente se desprende que, el 25 de abril de 2025, el señor Luis Águila Avilés, remitió una comunicación a los entrenadores y árbitros de los mencionados torneos. En dicha comunicación reseñó que, el 22 de abril de 2025, se había reunido con el señor Hernández del DRD, donde este último le comentó que todos los entrenadores y árbitros que tuvieran la certificación de la Federación Puertorriqueña de Voleibol se les convalidaría la certificación del DRD. Por tanto, le exhortó a los entrenadores y árbitros a sacar la certificación del DRD para cumplir con la agencia.

El 9 de junio de 2025, fue emitida la *Resolución* cuya revisión nos atiene. De esta surge que, el 6 de junio de 2025, el personal del DRD se presentó al Centro de Convenciones al evento deportivo *Puerto Rico Volleyball Championship,* con el propósito de inspeccionar los aspectos de seguridad y cumplimiento normativo. El DRD informó que, durante dicha visita se identificaron las siguientes infracciones a la reglamentación vigente del DRD:

- Desarrollo y promoción de una actividad deportiva sin contar con el correspondiente endoso del DRD (Artículo VII, Sección 7.00 del Reglamento para la Emisión de Endosos y Licencias de Actividades Recreativas y Deportivas, Número 6422).

- Desarrollo y promoción de un torneo deportivo con entr[en]adores y oficiales ejerciendo la profesión sin tener expedida a su favor una licencia vigente por el DRD (Artículo XI, Sección 1 (b) del Reglamento para la Licencia de Entrenadores y Oficiales Deportivos en Puerto Rico, Número 7690).

- Desarrollo y promoción de un torneo de voleibol de categorías menores en contravención al Artículo XIV del Reglamento para la Protección de los Menores en el Deporte: Principios para la Participación Deportiva en las Categorías Menores, Número 9179.

En virtud de las disposiciones antes reseñadas, el DRD le impuso a Sports Alternative las siguientes multas y amonestaciones por infracciones incurridas:

- Multa por la cantidad de cinco mil dólares ($5,000) por infracción al Artículo VII, Sección 7.00 del Reglamento para la Emisión de Endosos y Licencias de Actividades Recreativas y Deportivas, Número 6422.

- Amonestación por infracción al Artículo XI, Sección 1 (b) del Reglamento para la Licencia de Entrenadores y Oficiales Deportivos en Puerto Rico, Número 7690, y obligación de evidenciar en o antes de 60 días que los entrenadores y oficiales deportivos comenzaron el proceso para obtener su licencia; y que en futuras ocasiones contará con personal licenciado.

- Multa por la cantidad de quinientos dólares ($500) por infracción al Artículo XIV del Reglamento para la Protección de los Menores en el Deporte: principios para la Participación Deportiva en las Categorías Menores, Número 9179.

En desacuerdo, el 7 de julio de 2025, la parte recurrente presentó *Solicitud de Reconsideraci[ó]n*. A través de esta, mencionó que, no le fue notificada la alegada queja o querella por la cual se realizó la inspección del 6 de junio de 2025. Argumentó que, se violentó el debido proceso de ley ya que, se impusieron sanciones sin previa celebración de vista. Añadió que, el DRD no tenía jurisdicción para intervenir ya que, la Ley Orgánica del DRD le concedía autonomía deportiva a las federaciones para regir y dirigir el deporte del voleibol en Puerto Rico, sin la intervención, control o supervisión del Estado.

El DRD emitió *Resolución* el 21 de julio de 2025, donde declaró No Ha Lugar la reconsideración presentada por la parte recurrente.

Aun inconforme, la parte recurrente acudió ante este Tribunal revisor por medio de recurso de revisión judicial, y esgrimió los siguientes señalamientos de error:

1. El Honorable Secretario del DRD impuso multas y sanciones en violación al Artículo 26 (3 LPRA, Sección 444v) de la Ley Núm. 8 del 4 de enero de 2004, conocida como la Ley Orgánica del DRD (tome conocimiento judicial Exhibit 21) al no celebrar una Vista Administrativa en violación al Debido Proceso de Ley

   Art. 26(A) *El secretario tendrá la facultad para imponer sanciones ... de conformidad con los siguientes criterios*:

   **(a) *Previa notificación y vista, imponer sanciones y multas.***

2. El Lcdo. José M. Pérez incurrió en violaciones a los Reglamentos Núm. 6422, 7690 y 9179 todos promulgados por el DRD (tome conocimiento judicial Exhibit 22, 23 y 24) al haber una querella radicada para investigar, recomendaciones de imponer sanciones sin previa celebración de vistas, violentando el Debido Proceso de Ley.

3. El DRD no tiene jurisdicción para intervenir en el Torneo PR Volleyball Championship por ser un torneo federativo, ya que la propia Ley Orgánica del DRD le concede Autonomía Deportiva a las Federaciones (FPV) para regir y dirigir el deporte del voleibol en Puerto Rico, sin la intervención, control o supervisión del Estado.

Por otro lado, la parte recurrida presentó *Alegato en Oposición a la Revisión*.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

### A. Estándar de Revisión Judicial de Determinaciones Administrativas

De ordinario los tribunales apelativos debemos otorgar deferencia y respeto a las conclusiones e interpretaciones hechas por las agencias administrativas.[1] *Katiria's Café v. Mun. de San Juan*, 2025 TSPR 33, 215 DPR ___ (2025); *Vázquez et al. v. DACo*,

---

[1] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016).

2025 TSPR 56, 216 DPR ___ (2025); *OEG v. Martínez Giraud*, 210 DPR 79 (2022); *Pérez López v. Depto. Corrección*, 208 DPR 656, 672 (2022)[2]. No obstante, tal norma no es absoluta, es por lo que, nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. De igual manera, la más Alta Curia ha expresado que, la consideración otorgada por los tribunales no equivale a una renuncia de nuestra función revisora. *Vázquez et al. v. DACo*, supra.

En *Torres Rivera v. Policía de Puerto Rico*, supra, pág. 628, nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la forma siguiente:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales.[3]

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *Katiria's Café v. Mun. de San Juan*, supra; *OEG v. Martínez Giraud*, supra, pág. 89.[4] Bajo este criterio, se debe dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*; *Pérez López v. Depto. Corrección*, supra, pág. 673; *OEG v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otros*, supra, pág. 819-820.[5]

---

[2] *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019).

[3] Véase *Super Asphalt v. AFI y otros*, supra, págs. 819-820.

[4] Véase también, *Super Asphalt v. AFI y otros*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626.

[5] *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Batista, Nobbe v. Jta. Directores*, pág. 216.

Bajo este supuesto, la Sec. 4.5 de la Ley Núm. 38 del 30 de junio de 2017, según enmendada, 3 LPRA 9675, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), "estableció el marco de revisión judicial de las agencias administrativas". *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.* págs. 35-36; *Katiria's Café v. Mun. de San Juan*, supra; *OEG v. Martínez Giraud*, supra, pág. 90*; Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Nobbe v. Jta. Directores*, supra, pág. 217; Sec. 4.5 de la LPAU, 3 LPRA sec. 9675.

Las determinaciones de hechos contenidas en las decisiones de las agencias, *podrán* ser sostenidas por el tribunal cuando estén basadas en evidencia sustancial que obra en el expediente administrativo. Mientras que, conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. Sección 4.5 de la Ley Núm. 38-2017, 3 LPRA sec. 9675; *Vázquez v. Consejo de Titulares*, supra; *OEG v. Martínez Giraud,* supra, pág. 90; *Super Asphalt v. AFI y otros,* supra, pág. 819-820.

Los foros revisores podrán apoyarse en las interpretaciones de las agencias. Sin embargo, dichas interpretaciones "constituyen un acervo de experiencias y criterios informados a los cuales los tribunales y los litigantes bien podrán recurrir a modo de guía" y no avalar irreflexivamente, como se hacía en el pasado. *Vázquez v. Consejo de Titulares*, supra. En casos administrativos el tribunal deberá realizar su tarea con un "*body of experience and informed judgment*" de la agencia, entre otra información a su disposición. *Íd.* De igual manera, los tribunales deberán ejercer un juicio

independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias. *Íd.*

## B. Debido Proceso de Ley

La Constitución del Estado Libre Asociado reconoce como derecho fundamental del ser humano el derecho a la vida, la libertad y el disfrute de la propiedad. Const. De PR, Art. II, Sec. 7, LPRA, Tomo I. También dispone que, previo a interferir con los intereses propietarios o libertarios de un ciudadano, el Estado debe cumplir con las exigencias del debido proceso de ley. *Garriga Villanueva v. Municipio de San Juan*, 176 DPR 182, 196 (2009); *Katiria's Café v. Mun. de San Juan*, supra. Similar reconocimiento, sobre la existencia del debido proceso de ley, se encuentra en la Enmienda V y XIV de la Constitución de Estados Unidos. *Hernández v. Secretario,* 164 DPR 390, 394 (2005).

El concepto del debido proceso de ley tiene dos vertientes: la sustantiva, que se refiere a la validez de las leyes que implementa el Estado en cuanto a su protección de los derechos de los ciudadanos, y la procesal, que se enfoca en garantizar un proceso justo y equitativo ante acciones estatales que interfieran con intereses privados. *PVH Motors v. ASG*, 209 DPR 122, 130 (2022); *Garriga Villanueva v. Municipio de San Juan,* supra, a la pág. 196; *Fuentes Bonilla v. ELA et al.*, 200 DPR 364, 394 (2018); *Domínguez Castro v. ELA*, 178 DPR 1, 35 (2010).

Dado a que las agencias administrativas, bajo sus funciones administrativas interfieren con los intereses de libertad y propiedad de las personas, las garantías del debido proceso de ley son aplicables a sus procesos. *St. James Sec. v. AEE*, 213 DPR 366 (2023); *PVH Motors v. ASG*, supra, pág. 130-131. Sin embargo, en el derecho administrativo el debido proceso de ley no tiene la misma rigidez que en la esfera penal. *Íd.*; *Katiria's Café v. Mun. de San Juan*, supra. Ello, se debe a la necesidad que tienen las agencias de

regular las áreas que le han sido delegadas por la Asamblea Legislativa debido a su peritaje en el campo. Aun así, el procedimiento adjudicativo debe de ser uno justo y equitativo. *Báez Díaz v. ELA,* 179 DPR 605, 623 (2010). Es por lo que, el procedimiento adjudicativo frente a las agencias, deberá ceñirse a las garantías mínimas del debido proceso de ley. *PVH Motors v. ASG,* supra, pág. 131; *Álamo Romero v. Adm. de Corrección,* 175 DPR 314 (2009).

En armonía con lo anterior, en los procesos adjudicativos se exige como mínimo: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) contar con asistencia de un abogado, y (6) que la decisión se base en el expediente. *PVH Motors v. ASG,* supra, pág. 131; *St. James Sec. v. AEE,* supra, pág. 396; *Katiria's Café v. Mun. de San Juan,* supra.

Para determinar si un procedimiento administrativo de tipo adjudicativo cumple con los requisitos constitucionales del debido proceso de ley, hay que analizar los factores siguientes: el interés privado que puede resultar afectado por la actuación oficial; el riesgo de una determinación errónea debido al proceso utilizado y el valor probable de garantías adicionales o distintas; y el interés gubernamental protegido en la acción sumaria, inclusive los cargos fiscales y administrativos que conllevaría el imponer otras garantías procesales. *Báez Díaz v. ELA, supra,* a la pág. 623.

Mediante la aprobación de la LPAU, la Asamblea Legislativa extendió a los procedimientos adjudicativos de las agencias administrativas ciertas garantías mínimas inherentes al debido proceso de ley", porque, "en su función adjudicativa, las agencias administrativas intervienen con intereses libertarios y propietarios del ciudadano". *Katiria's Café v. Mun. de San Juan,* supra, citando

a *Álamo Romero v. Adm. Corrección*, 175 DPR 314, 329 (2009).

Conforme a ello, la sección 3.1 de la LPAU establece:

> En todo procedimiento adjudicativo formal ante una agencia se salvaguardarán los siguientes derechos:
>
> (A)   Derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte.
>
> (B)   Derecho a presentar evidencia.
>
> (C)   Derecho a una adjudicación imparcial.
>
> (D)   Derecho a que la decisión sea basada en el expediente.[6]

Mediante la garantía del debido proceso de ley, se busca alcanzar una protección en contra de la arbitrariedad, sin que se prive el carácter expedito y flexible de los procesos adjudicativos celebrados ante una agencia administrativa.". *Katiria's Café v. Mun. de San Juan*, supra.

### C. *Ley Núm. 8-2004*

Con el propósito de reestructurar el Departamento de recreación y Deportes, para redirigir sus funciones hacia el cumplimiento de una nueva política pública sobre la recreación y deportes, la Asamblea Legislativa dio paso a la creación de la Ley Orgánica del Departamento de Recreación y Deportes, Ley Núm. 8 de 8 de Enero de 2004, según enmendada.[7] Dentro de la política pública del aludido estatuto, se encuentra el "proveer las condiciones adecuadas de seguridad para toda actividad de recreación y deportes, regulando y fiscalizando dichas actividades, organizaciones o individuos". Art. 2(f) de la Ley Núm. 8-2004, *supra.* Asimismo, el precitado artículo dispone que, como parte de la política pública se dispone la facultad de "examinar, emitir opiniones, o intervenir en toda actividad o asunto relacionado con la recreación y el deporte en el País, como parte de la

---

[6] 3 LPRA sec. 9641.
[7] *Exposición de Motivos* de la Ley Núm. 8-2004.

responsabilidad gubernamental para garantizar el bien común y el interés público". Art. 2(k) de la Ley Núm. 8-2004, *supra.*

Por otro lado, el Artículo 5 de la Ley Núm. 8-2004, establece las funciones y competencias del Departamento de Recreación y Deportes. Entre estas, se halla la regulación de actividades relacionadas con la práctica del deporte, la inspección y el ejercicio de la potestad sancionadora en materia deportiva y recreativa, entre otras. Art. 5 (e) y (j) de la Ley Núm. 8-2004.

La Ley Núm. 8-2004, *supra,* también dispone varios deberes y facultades que le han sido conferidos al Secretario del Departamento de Recreación y Deportes. En específico, el inciso 17 de su Artículo 6 dispone que, el Secretario estará facultado para conducir vistas públicas, inspecciones, investigaciones y auditorías para alcanzar los propósitos de esta Ley. Asimismo, el inciso 20 del Artículo 6 también establece que, el Secretario podrá imponer multas, emitir sanciones u órdenes a cualquier persona natural o jurídica por violaciones a las disposiciones de este estatuto y demás leyes que el DRD administra, así como sus reglamentos y órdenes emitidas.

Por otra parte, El Artículo 26 de la Ley Núm. 8-2004, dispone que, el Secretario estará facultado para imponer sanciones y dictar órdenes a toda persona natural o jurídica de conformidad con varios criterios allí dispuestos. A saber, el inciso (a) menciona que previa notificación y vista el Secretario podrá imponer sanciones administrativas por las violaciones a ésta y demás leyes que el Departamento administra, así como violaciones a sus reglamentos y órdenes emitidas a su amparo. Artículo 26(a) de la Ley Núm. 8-2004, *supra.*

Esbozada la normativa jurídica, procedemos a aplicarla al caso ante nuestra consideración.

**III**

En su primer señalamiento de error, la parte recurrente sostiene que, el DRD incidió al imponerle multas y sanciones en contravención al Artículo 26 de la Ley Núm. 8-2004, *supra*, al no celebrar una vista administrativa en violación al debido proceso de ley.

Como segundo señalamiento de error, la parte recurrente arguye que, el DRD incurrió en violaciones a los Reglamentos Núm. 6422, 7490 y 9179 promulgados por el DRD, al haber una querella radicada para investigar, recomendaciones de imponer sanciones sin previa celebración de vista, en violación al debido proceso de ley.

Por encontrarse intrínsecamente relacionados, discutiremos ambos señalamientos de error de forma conjunta.

Adelantamos que, le asiste la razón. Veamos.

Según se desprende del expediente, el 6 de junio de 2025, el personal del DRD se presentó al Centro de Convenciones al evento deportivo *Puerto Rico Volleyball Championship*. Lo anterior, con el propósito de inspeccionar los aspectos de seguridad y cumplimiento normativo.

El 9 de junio de 2025, fue emitida la *Resolución* cuya revisión nos ocupa, en virtud de la cual, el DRD le impuso a la parte recurrente: una amonestación por infracción al Artículo XI, Sección 1 (b) del Reglamento para la Licencia de Entrenadores y Oficiales Deportivos en Puerto Rico, Número 7690; multa por la cantidad de $5,000.00 por infracción al Artículo VII, Sección 7.00 del Reglamento para la Emisión de Endosos y Licencias de Actividades Recreativas y Deportivas, Número 6422, y multa por la cantidad de $500.00 por infracción al Artículo XIV del Reglamento para la Protección de los Menores en el Deporte: principios para la Participación Deportiva en las Categorías Menores, Número 9179.

Inconforme con dicha determinación, la parte recurrente presentó la *Solicitud de Reconsideraci[ó]n*. Mediante esta, alegó que, no le fue notificada la queja o querella por la cual se realizó la inspección del 6 de junio de 2025. Asimismo, añadió que, se le violentó el debido proceso de ley al imponerle sanciones sin previa celebración de vista. Dicha solicitud fue declarada No Ha Lugar.

De acuerdo al derecho expuesto, la Ley Núm. 8-2004, *supra*, en el inciso 20 del Artículo 6 establece que, el Secretario podrá imponer multas, emitir sanciones u órdenes a cualquier persona natural o jurídica por violaciones a las disposiciones de este estatuto y demás leyes que el DRD administra, así como sus reglamentos y órdenes emitidas. Sin embargo, el Artículo 26 de la misma ley impone ciertos criterios para la imposición de sanciones, a saber, previa notificación y vista el Secretario podrá imponer sanciones administrativas por las violaciones a ésta y demás leyes que el Departamento administra, así como violaciones a sus reglamentos y órdenes emitidas a su amparo.[8]

Es importante destacar que, el procedimiento adjudicativo frente a las agencias deberá ceñirse a las garantías mínimas del debido proceso de ley.[9] Conforme a ello, en los procesos adjudicativos se exige como mínimo: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) contar con asistencia de un abogado, y (6) que la decisión se base en el expediente.[10]

Estas garantías mínimas, también surgen de la sección 3.1 de la LPAU, donde dispone que, en todo procedimiento adjudicativo

---

[8] Artículo 26(a) de la Ley Núm. 8-2004, *supra*.
[9] *VH Motors v. ASG*, supra, pág. 131.
[10] *PVH Motors v. ASG*, supra, pág. 131; *St. James Sec. v. AEE*, supra, pág. 396; *Katiria's Café v. Mun. de San Juan*, supra.

formal ante una agencia deberán salvaguardarse los siguientes derechos:

> (A)   Derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte.
>
> (B)   Derecho a presentar evidencia.
>
> (C)   Derecho a una adjudicación imparcial.
>
> (D)   Derecho a que la decisión sea basada en el expediente.[11]

Por medio de las garantías del debido proceso de ley, se aspira a alcanzar una protección en contra de la arbitrariedad, sin privar el carácter expedito y flexible de los procedimientos adjudicativos celebrados ante una agencia administrativa.[12]

Si bien es cierto que el DRD está facultado para imponer multas y sanciones por incumplimiento con sus leyes y reglamentos, este se encuentra condicionado a cumplir con las garantías mínimas del debido proceso de ley. Aunque el DRD afirma que salvaguardó el debido proceso de ley de la parte recurrente, al brindarle la oportunidad de presentar evidencia mediante una reconsideración, ello no es suficiente. Pues, la Ley Núm. 8-2004, *supra*, exige que se celebra una vista cuando se pretenda impedir sanciones.

Surge del expediente que, la visita llevada a cabo el 6 de junio de 2025 en el evento deportivo *Puerto Rico Volleyball Championship*, fue producto de una queja sobre que se estaban jugando más partidos de lo permitido reglamentariamente. Luego de la visita y de los alegados incumplimientos reglamentarios observados por el DRD, correspondía la celebración de una vista conforme a la Ley Núm. 8-2004, *supra*. Una vez celebrada la vista, de así entenderlo, el DRD podía imponer las sanciones correspondientes.

---

[11] 3 LPRA sec. 9641.
[12] *Katiria's Café v. Mun. de San Juan*, supra.

Consecuentemente, y en aras de salvaguardar el debido proceso de ley que le asiste a la parte recurrente, es necesario que el DRD celebre una vista administrativa.

En su tercer señalamiento de error, la parte recurrente aduce que, el DRD carece de jurisdicción para intervenir en el evento deportivo *Puerto Rico Volleyball Championship*, por ser un torneo federativo.

Habiendo resuelto lo anterior, se torna innecesario discutir el tercer señalamiento de error esbozado por la parte recurrente.

**IV**

Por los fundamentos que anteceden, se revoca la *Resolución* recurrida y se devuelve el caso al Departamento de Recreación y Deportes para que celebre una vista administrativa, conforme a lo aquí previamente reseñado.

Hacemos constar que, con esta determinación, no estamos entrando en los méritos respecto a la procedencia de las multas.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones